Case number 22-1205. City of Lincoln doing business as Lincoln Electric System Petitioner versus Federal Energy Regulatory Commission. Ms. Roby for the petitioner, Mr. Kennedy for the respondent, Mr. Genda for the intervener. Is it Ms. Roby or Roby? Roby, thank you very much. Good morning. Good morning. Can you hear me okay? I can. Okay. For now. For now. Probably change in a minute. My family tells me I speak very loud, so I think we'll be okay. I do have an issue with eyesight. May it please the court. Deborah Roby for petitioner, Lincoln Electric. I'd like to reserve two minutes for rebuttal, please. FERC's order is denying Lincoln Electric's recovery of its revenue requirement for transmission facilities located in Zone 19 of Southwest Power Pools Transmission Pricing Zone 19. Arbitrary and capricious are not reflective of reasoned decision-making and are contrary to law. This is so because the findings are contrary to the record evidence and are otherwise unsupported by record evidence. They also depart from long-established FERC precedent. First, the orders depart from the principles of zonal rate design. Under a license plate structure, FERC has repeatedly held that it is just and reasonable to allocate transmission costs to the zone in which the facilities are located and factors such as physical integration with existing zonal facilities are indicative of appropriate zonal placement and cost recovery. FERC also had a lot of precedent that beyond physical location, the cost causation can be for those customers in that particular who are being served. You're articulating the cost causation and beneficiary pays principles. That is absolutely true, but the beneficiary pays principles in the context of a zonal rate design find that physical location matters. Those in proximity to the facilities are deemed to benefit from those facilities. What matters is, is the facility an integrated component of the facilities that support load within that zone. That is the zonal rate. Tell me about what you mean by benefit, because if it's serving a different zone, you can have a physical location one place, but it's serving customers elsewhere, right? Well, in the context of an RTO, there is the concept of network integrated transmission service. That concept, as Western noted in its brief, and as we note in our brief, the concept then goes from instead of, there's a concept that it operates more like a reservoir than a railroad. Power is injected throughout the region at various points throughout the region, and it is withdrawn throughout the region. Users within the RTO have the benefit of using the entirety of the facilities, but in a zonal rate construct, you pay for the facilities that are located in the zone in which load is located, the delivery point. You don't pay for the facilities where you source that generation. That is the nature of the zonal rate construct. Here, what FERC did was evaluate, they essentially created a fiction. There's no question that the facilities are located in zone 19. There is no question that they are part of the Southwest Power Pool's network service. This happened in 2015 when the Southwest Power Pool was expanded to include these and other facilities of the integrated system parties. This was the creation of zone 19 in 2015, and once that happened, that zonal placement decision for these facilities was made, and the question is... Well, why didn't you all move to change the rate formula template in 2015 then? Well, it's not unusual for joint owners of facilities to modify their formula rates or to seek rate recovery at different times. There's nothing unusual about that. There's no requirement that you do so at the same time. There's testimony from Lincoln Electric. Lincoln Electric is a relatively small system compared to the larger systems of the RTO, and it got to it when it could dedicate the resources necessary to prepare the modifications to its formula rate to effectuate that decision to place the facilities in zone 19. There's no bar, no time limitation for doing so. Are you doubting that they're a legacy facility? They are not legacy facilities in the context of Lincoln Electric's system. This is what FERC is. It matters what legacy facility means there. Opinion 494 addressed the larger question of rate design within the PJMRTO and the question of whether to depart from the zonal rate design and go to a single postage stamp rate. There's not a question of rate design here, and instead, the commission said that the legacy facilities are essentially the service territory of the utilities that make up the geographic territories of those zones. Here, these facilities are not part of Lincoln Electric's system. Lincoln Electric's system is located 300 miles away in southeast Nebraska and essentially is comprised of the facilities around the metro Lincoln, Nebraska area. These facilities at issue here, and remember, we're talking about an undivided ownership interest in facilities that are located in eastern Wyoming and western Nebraska. They are not built to support load in the Lincoln, Nebraska area. They are integrated components of the system that is the backbone of the network that comprise the facilities of the integrated system parties, and that includes Basin Electric. They were built as part of Basin Electric's system. There's no question that the facilities are already part of the southwest power pool system. Lincoln Electric did not propose to include any new facilities as part of its proposal. It did not ask to expand the system in any way. It sought simply to implement a prior decision that recognized that the facilities are located in zone 19 and cost recovery should follow that decision. There was no new request for a zonal physical location and then cost causation conflict. I don't believe there is a conflict. Okay, but I'm asking in that scenario. Sure. Like you have physical location, you know, somewhere else and it's serving customers elsewhere. You've got some precedent suggesting that the customer should pay, you know, their portion of the load even though the facility's somewhere else and you're arguing that there's a physical location different, but those two concepts can conflict sometimes. So how do we then rectify that? Well, I don't think they, with due respect, I don't think they conflict because there's a series of decisions that are made and the first decision is where are the facilities located? As the commission has held in the Rochester decision, transmission facilities are not ethereal concepts. They are fixtures that are placed into the ground. They do not move from location to location. So we start with the physical location of the facilities and the benefits that accrue to those in proximity of those facilities include such benefits that aren't quantifiable, such as reliability and increased pathways to move power. But in a zonal rate construct, which is what is relevant here, if the facilities that are the load that's in that zone and all load in the zone are deemed to benefit from all facilities in the zone, it does not matter if a facility was constructed in the far northeast corner of the zone and another facility is constructed in the far southwest corner of the zone. They're built for different purposes, but all load is deemed to benefit from those facilities because of the geographic nature of the zones and the zonal rate construct within the RTO. What matters here is the use. The use has changed. FERC attempts to draw distinction here and relies solely on the original intent. And I've gone into my rebuttal time here, but the concept here is FERC fails to recognize the changed use here. And what matters is when the facilities come into the RTO, is service provided pursuant to the RTO's rules? And the answer here is an unequivocal yes. There's no special treatment being sought here. And Lincoln's use no longer relies on a specific path. It relies on network integrated transmission service, which is the benefit that it received as being a member of the RTO. All right. Thank you. Mr. Kennedy. Good morning, Your Honor. It's Robert Kennedy on behalf of the Commission. In this case, the Commission reasonably found that Lincoln Electric's proposal to have Zone 19 customers pay for their investment in the Laramie River facilities. They have not established that it was just and reasonable. That decision was consistent with state of the record before the 38 of opinion 498, which is discussed throughout the briefs and the underlying orders. The Commission explained that when it comes to legacy facilities and cost allocation, it's going to examine cost allocations proposals to make sure they are allocated to first those who caused the cost to be incurred and second other beneficiaries. And it followed that approach here. With respect to who caused the cost to be incurred, I thought we had pinned down that this had been purchased by Lincoln. This interest in the facilities had been purchased by Lincoln Electric to serve their load in Zone 16. I thought I heard a little bit of equivocation today, but these are, in fact, legacy facilities. The Commission reasonably concluded that based on Lincoln Electric's response to the deficiency letter, in particular, section of page 538, where it said it purchased the share in the facilities to serve its load, which is in Zone 16. The Seventh Circuit's decision in Illinois Commerce said it's reasonable to allocate the cost of legacy facilities to those customers who were the reason for the purchase, makes economic sense, and the utility who made this investment had no expectation of recovery from anyone other than its customers for whom it purchased. But then the Commission went on and examined whether there's evidence in the record that Zone 19 customers benefit from this. And before getting into this, I just want to step back and set the procedural posture here. This is a filing under section 205 of the Federal Power Act by Lincoln Electric. And under section 824DE, it is Lincoln Electric's burden to establish that it's just and reasonable. And the Commission went through each of the justifications put forward by Lincoln Electric as to why, excuse me, the Zone 19 customers should pay. The first, and this is the only justification in their initial filing, and this is, they support it with a declaration from one of their managers, Mr. Florum, this is page 245 of the JA. And what he said is Zone 19 customers should pay because they're already using our interest in these facilities, and our filing just sort of trues up the rate to existing practice. The Commission reasonably found, it dug into that question, and it found based on, again, Lincoln Electric's own statements from SPP that, in fact, Lincoln Electric's share in this facility had not been turned over to SPP's control. Customers had not yet been using it. That was contingent on the Commission accepting this proposal. So then the second justification was, well, Commission, your precedent says physical location governs. And the Commission walked through and explained. And in this regard, I would point the court to the City of Nixon case, which Lincoln Electric submitted in a 28-J letter. And in paragraph 10 of that order, the Commission said, again, when it comes to cost allocation, it's a case-by-case analysis that looks to see whether the costs imposed upon the party are reasonably commensurate with the benefits. And the Commission walked through the various cases that Lincoln Electric pointed to and said, look, in some of them there's record evidence that the customers who you want to this particular facility not been built by party A, the local utility would have had to build it itself. In City of Nixon, we heard discussion of integration benefits and things of that nature. And certainly it's true that facilities can benefit those around it. I mean, that's obvious. But there has to be evidence in the record that shows something that allows the Commission to the costs and the benefits. In City of Nixon, there was testimony, not just a statement that they're integrated. There was testimony establishing why that mattered. It allowed for more efficient planning. The integration allowed for the local utilities to avoid reliability problems. There was testimony that it opened up additional paths to generation. All of that's lacking. And again, this sort of gets us back to where we started with the Seventh Circuit's opinion in Illinois Commerce. The first half was about legacy facilities and the Commission's decision here sort of follows that. The second half, the Seventh Circuit faulted the Commission for doing just what Lincoln Electric is doing here, just invoking general statements that these are backbone facilities, that they have integration benefits without putting any sort of meat on the bone that will allow some sort of balance. I understand that the opposing counsel's argument is that there are changed circumstances. So even if the legacy notion and location notion are viable, her argument is that the circumstances have changed. You seem to say the Commission said that's not right. I'm looking at what they said. We acknowledge Lincoln Electric's representations that its use of its share in the LRS facilities has changed over time, and that Lincoln Electric currently relies exclusively on network service to deliver the LRS facilities output to Lincoln Electric. Isn't it credible? Isn't what she said credible, that circumstances are not what they were initially? No, I think the Commission did acknowledge that they were taking network service. The Commission also found that currently there is evidence in the record indicating that Zone 16 customers are still the beneficiaries of their share. A, it has not been turned over to FEP, so we know Zone 19 customers are not benefiting from it. Lincoln Electric is recovering under its investment in this facility under its retail rates from Zone 16 customers, which suggests they are still benefiting. And third, Lincoln Electric has what we call a grandfather transmission agreement, pre-existing agreement that's brought in, and they are able to take service under the, it still exists notwithstanding the global tariff. And Lincoln Electric acknowledges on page 651 of the JA that that allows them to avoid certain congestion charges, which also will benefit their load in Zone 16. But yes, certainly circumstances have changed, but there must be some showing that those changed circumstances weren't imposing these costs on Zone 19 customers. The evidence is SPP, the Commission found in paragraph 37 of the initial order that there's no need for this capacity in Zone 19 right now. Those particular facilities are already the two pieces that have been turned over to SPP. There's already excess capacity in standing alone. Lincoln Electric would only add to that surplus, and there's no turning this over to SPP, allowing an excess capacity to be sold. That doesn't mean that Lincoln Electric just gets some money when the excess transmission is used. It would mean the way this rate design works. If it's placed in Zone 19, those Zone 19 customers would have to reimburse Lincoln Electric for their investment, whether it's used or not. And yes, there is a zonal rate design that's premised on the notion that facilities work together and provide zonal benefits, but before a facility is placed in a zone, there has to be a demonstration, record evidence, that it benefits the parties who are being asked to pay for it. And that's what's lacking. All right. Thank you, Your Honors. Thank you. Mr. Janda? Thank you, Your Honor. May it please the Court. Sean Janda for the Western Area Power Administration. I'm happy to address any questions that the Court might have, but otherwise, I'd just like to make three brief points. So first is, I think it can be a little bit easy to get lost in the technical complexity underlying this case. But at its core, what's happening here is, I think, quite simple. Lincoln Electric, in 1977, made a decision to invest in these facilities to benefit Lincoln's customers in Lincoln, who are now in Zone 16. And for decades, Lincoln used the facilities to deliver benefits to those customers, used them basically as a railroad, to return to that Nebraska. And now that Lincoln has joined the pool, the facilities have joined the pool, Lincoln has apparently decided it doesn't want to or need to use them in that way anymore, and it wouldn't like to continue paying for them. But Western Area Power Administration, the other Zone 19 customers, had nothing to do with Lincoln's decision to incur those costs originally, are not benefiting from the facilities today, have no use for the facilities today. And I think FERC, looking at that record, made the very reasonable determination that it would not be fair, it would not comport with the authorization principle to allow Lincoln to foist those costs onto Zone 19 customers when they're not using facilities, benefiting from the facilities, and had nothing to do with the decision originally to invest in the facilities and incur those costs. Second is, to the extent that Lincoln is suggesting that there's something special about the physical location of the facilities that should dictate the outcome here, I do think it's important to recognize that that bridge has sailed. The tri-state investment in exact same facilities has been allocated to Zone 17. FERC talks about this in FERC's brief. Zone 17 is where tri-state serves customers. It's where the beneficiaries of tri-state's investment in these same facilities has been allocated. The State Circuit approved that allocation in the MPPD case that's cited throughout the briefs. And so I don't think there's anything sort of special or magical, historically or in the Commission's or this Court's precedent, about physical location that would override the question of who actually has been benefiting from these facilities for the last 45 years. And then third, again, just very briefly, I think to the extent that there's any questions in the Court's mind, it is important to remember the sort of doubly deferential standard of review here. Lincoln bore the burden originally of proving that this proposed change was just and reasonable. FERC rejected that. And Lincoln now bears the burden in this Court of showing that FERC's decision not just is wrong, but is arbitrary and capricious under a very sort of complicated and technical questions about electricity management. And so to go back to your question, Judge Childs, you know, even if there might be different strands of precedent pointing in different directions in this case, I think FERC went through all of the precedents cited in really an admirable way and determined that in the particular context of this case, on this specific record, that the sort of just and reasonable thing to do is not to allocate all of the costs, some costs of these facilities to the Zone 19 customers. And so even if, again, there might be some precedents or principles that might point in the opposite direction, at the end of the day, I think FERC's weighing of that evidence and ultimate conclusion is entitled to substantial deference from this Court. I do have a question, and that is, I wasn't familiar with these federal utilities. And how many are there in the country? Is TVA one of them, or is that? So I'm not sure exactly how many there are. I think TVA is one. The Bonneville Power Administration is one. The Western Area Power Administration is one. And they, as a general matter, sell – market and sell – generate hydroelectric power from all the dams and power structures that you can think of. So you're basically a competitor. Competitor utility, I guess. I'm not sure that we compete on a utility front with Lincoln, for example, because I'm not sure that the Western Area Power Administration actually serves customers in Lincoln. Lincoln serves customers. But we sell power to – mostly, I think, to statutorily designated preference customers, Indian tribes, state and federal agencies, municipalities, cooperatives. Thank you. Thank you. Let's see. Mr. – or Ms. Broby, why don't you take two minutes? Thank you very much. I'd like to address a few items here. First is, it's important to understand that what Lincoln proposed was not a different zonal placement decision than one had already been made. When facilities are placed, it happens once. It doesn't happen every time a joint owner comes in. The tri-state decision didn't involve zonal placement of the facilities themselves. That was an election by tri-state to depart from what had already occurred in 2015. There's nothing in the tariff that prevented tri-state from seeking a different cost recovery from what FERC had already proved when those facilities were placed in the first instance. But Lincoln Electric is not making an election to depart from that decision that was made in 2015, which is why its proposal was about the mechanism for recovery. What FERC did – FERC never got to the mechanism for recovery. Instead, we're going to evaluate Lincoln's share as though it is a separate facility that must be evaluated brand new, as though it's new to the system. And that is a fiction. It is simply not true. It's not what happened. The second thing is, with respect to the degrees of physical connection and the City of Nixa, the City of Nixa decision, again, is a zonal placement decision, and that there is an evaluation of the benefits to determine who benefits from the physical facilities. That, again, is one of those decisions that happens at the time the facilities come into the RTA. These facilities are not new. The facility is already part of the Southwest Power Pool RTO. And the Southwest Power Pool has said, as far as excess capacity, the Commission has never made a determination, as far as I'm aware, that whether or not you may recover from a particular zone depends on how much capacity is available in that line. The Commission doesn't separate out capacity and treat it as though it's a separate facility. This is the nature of multi-owner transmission pricing zones as well. The Zone 19 started with the initial integrated system parties, I think three or four parties. There are now 20 transmission owners that are listed in Zone 19. Each one of them constructed facilities for the benefit and use of their own systems. But now everybody in the zone is paying for those. If the original intent theory were central to this evaluation, there could not be 20 transmission owners all sharing in the costs that exist now in Zone 19. There could be no multi-owner transmission pricing zones. The focus on the original intent to the exclusion of all other relevant factors is where FERC erred here. And that cannot be upheld. It would destroy the very nature of the zonal rate construct. You couldn't have multi-owner transmission pricing zones. Thank you very much. Thank you.
judges: Henderson, Childs, Edwards